Oren M. Durham v. Commissioner. Celia K. Durham v. Commissioner.
Durham v. Commissioner
Docket Nos. 26998, 26999.
United States Tax Court
1952 Tax Ct. Memo LEXIS 294; 11 T.C.M. (CCH) 228; T.C.M. (RIA) 52068; March 12, 1952
Griffith Way, Esq., for the petitioners. John H. Pigg, Esq., for the respondent. MURDOCK Memorandum Findings of Fact and Opinion The Commissioner determined against each of the petitioners for 1946 a deficiency in income tax of $1,212.88, a penalty of $47.85 under section 291(a), and a penalty of $47.85 under section 293(a). The petitioners assign as error the action of the Commissioner in holding that they sustained a long-term capital loss of $20,997.94 from an investment in the O.M.D. Club, Inc. and claim that the amount represented a nonbusiness bad debt. The Commissioner pleads in the alternative that if the amount in controversy was a loan, all but $4,346.15 of it was advanced and became worthless prior to 1946 and the deficiency *295 should be increased accordingly. Findings of Fact The petitioners, husband and wife, filed their returns for 1946 with the collector of internal revenue for the District of Washington. The petitioners were formerly residents of Anacortes, Washington. They and Earl R. Stump incorporated the O.M.D. Club, Inc. in December 1944. It was organized under laws relating to social and charitable associations. It had no capital stock. The governing body of the club was its board of trustees which consisted of the three incorporators. The club had at one time or another approximately 800 members, most of whom paid $1.00 and the remaining few of whom paid $10 to join. It was to furnish food, set-ups for drinks, and entertainment. Durham hoped to obtain a state liquor license for the club, but no such license could be obtained until the club had operated for one year. Hope of obtaining such a license was abandoned in March 1946 and none was ever obtained. The club began operations on the last day of December in 1944 and continued to operate until some time in March 1946. It was well patronized at first, but before the end of 1945, due to a number of circumstances, the patronage fell off *296 and the club began to lose money rather rapidly. The trustees, at a meeting held on February 5, 1945, granted the request of O. M. Durham "for permission to loan the corporation money if and when needed." The club needed money for operating expenses later in 1945 and Durham loaned it during that period $16,651.79. He loaned it additional funds in the early part of 1946 in the total amount of $4,346.15. The record does not show that any interest rate was agreed upon for the loans thus made. No note or other evidence of the loans was given until May 31, 1946, at which time O. M. Durham, as president of the club, signed a promissory note for $20,997.94 payable to himself due July 31, 1946. The advances were never repaid to Durham. The petitioners claimed the $20,997.94 as a bad debt deduction for 1946. The Commissioner disallowed the deduction and held that the advances must be considered as paid for ownership of the corporation even though no certificates of ownership were issued. He gave a lenghty explanation for his action which included the statement, "There appears to be no question but that the amount charged off was properly determined to be unrecoverable in 1946." He held *297 that the $20,997.94 represented a long-term capital loss. The $20,997.94 represented a loan to the corporation and did not represent an investment in the corporation. The debt was a non-business debt. It became worthless in 1946. The stipulated facts are incorporated herein by this reference. Opinion MURDOCK, Judge: There is no question about the amount of money advanced by Durham to the corporation. He claims that he advanced it as a loan, whereas the Commissioner has held and now contends that it was not a loan but an investment representing ownership of the corporation. The matter of the advances was loosely handled. However, there was no way of evidencing or of recovering any "investment". The petitioner intended and hoped that his money would be repaid. The evidence favors the petitioner's contention and a finding has been made that the advances represented loans. The Commissioner pleads in the alternative that if the advances were loans, then the part advanced in 1945 was worthless at the end of 1945 since the corporation had no assets and was insolvent at that time. This contention is contrary to his explanation given in support of his determination in which he said *298 "There appears to be no question but that the amount charged off was properly determined to be unrecoverable in 1946." Therefore, the Commissioner under this alternative contention is taking a new position and must shoulder the burden of proof. Not only does the evidence fail to show that this part of the debt was worthless in 1945, but the evidence, such as it is, tends to show that there was still reasonable ground to believe at the end of 1945 that the club might eventually obtain a liquor license and prosper as a result. Both parties agree that if there was any debt, it was a non-business debt. The Court feels that the correct solution under the circumstances is to treat the entire amount as a non-business bad debt for 1946. Decisions will be entered under Rule 50.